POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

|  |  |
|---|---|
| In re | ) Case No.  25-10088-B-7 |
|  | ) |
| **AMY ANNE CORPUS,** | ) |
|  | ) |
| Debtor. | ) |
|  | ) |
|  | ) |
| LESLIE SLOVER, an individual; | ) Adv. Proc. No. 25-01017-B |
| LILY ORTIZ, an individual, | ) |
|  | ) Docket Control #FW-3 |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| AMY CORPUS, an individual, dba | ) |
| KALOS SPECIALIZED SERVICES, a | ) |
| California corporation; and | ) |
| DOES 1 through 50, inclusive, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

### MEMORANDUM RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION[1]

Two former employees of debtor's business seek to have their claims for alleged sexual harassment and personal injury they suffered while working determined to be non-dischargeable under 11 U.S.C. § 523(a)(6) for willful and malicious injury.[2]

///

---

[1] The following are the court's findings of fact and conclusions of law under Fed. R. Civ. Proc. made applicable to adversary proceedings by Fed. R. Banky. Proc. 7052.  Any finding of fact that is deemed a conclusion of law is adopted as such.  Any conclusion of law deemed a finding of fact is adopted as such.

[2] Throughout this Memorandum references to a section will be to the United States Bankruptcy Code.  References to the Federal Rule of Civil Procedure will be "Civ. Rule."  References to the Federal Rules of Bankruptcy Procedure shall be "Rule."

1

Debtor owned and operated a business providing care to developmentally disabled adults.  One of debtor's clients caused the alleged injuries.

Debtor asks for summary judgment urging that debtor neither caused the injuries, was substantially certain co-plaintiffs would be injured or acted with malice as a matter of law.

Finding disputed issues of material facts, the court DENIES the motion for summary judgment.

**FACTS**

1.　 Parties.

　A.　*Defendant Amy Corpus dba Kalos Specialized Services ("Corpus" or "Kalos")*

Kalos is a vendor with the California Department Developmental Services ("DDS") providing services to individuals with developmental disabilities.  In California, persons with developmental disabilities and their families have a right to receive services and support.  DDS provides three primary services: Supportive Living Services Programs ("SLS"), an Independent Living Program ("ILP"), and a Community Integration Program ("CIP").  Kalos provides services to those individuals not suited to live in group homes.  Specifically, Kalos provided support services to clients with behavior issues that manifested in addition to underlying mental retardation.

The clients Kalos served exhibited many adverse behaviors including fabrication; psycho-social disorders; aggression; depression; eloping syndrome; schizophrenia; paranoia; ritualistic behavior patterns; boundary disorders; sexual

2

preoccupation; property destruction; and other behavioral disorders.

Kalos had a managerial hierarchy. Caretakers for Kalos' clients would report to managers if there were inappropriate behaviors or a particular client's protocol needed to be altered to address any particular anti-social behavior. There were multiple supervisory layers between Corpus and direct care staff including program directors, supervisors, and managers.

Kalos' written anti-harassment policy required all supervisors to report any harassment immediately and directly to Amy Corpus. This allowed the company to investigate and try to resolve the claim internally. Corpus expected to be made aware "immediately" of physical aggression toward staff and expected an incident report and a phone call.

Caring for the Kalos clients involves domestic duties but one of the primary directives was to help the clients control behaviors that could cause them or others harm. That includes helping the clients to manage impulses, minimizing and redirecting negative behaviors, teaching coping skills, and keeping the clients safe.

B. *Client X*[3]

Client X is a middle aged, un-conserved male. He is mentally retarded and generally operates at the level of an eight year old child. But since he is un-conserved, Client X retains full legal rights and autonomy to make his own decisions despite his intellectual disability and behavioral disorders. Client X has been diagnosed with bipolar disorder; depression; paranoia;

---

[3] This reference to "Client X" is intentionally vague to protect his identity.

diabetes; severe hearing loss; speech impairment to the extent he is considered mute; generalized seizure disorder; and other comorbidities. Client X communicates using American sign language.

Client X needs substantive assistance to meet his needs, and constant interdictions to challenge his behavioral disorders. He requires twenty-four hour supervision and thoughtful monitoring of his activities and behaviors based upon professional evaluation of staff of DDS. 24/7 staffing is required.

He has multiple "triggers" that upset him. For example, if people wrote down things without showing him what was being written, Client X would believe that people are reporting "bad things" about him. Seeing someone texting on their phone or viewing on their phone was very upsetting to him and triggered paranoia. Since he was deaf, he could not tolerate people speaking on their phones.

If he felt he was being ignored, Client X would be frustrated and exhibit antisocial behavior. He was also known to masturbate in his own home. Since he was required to be constantly supervised, Client X was unable to have complete privacy. He would not latch the bedroom or bathroom door to avoid triggering his feeling of paranoia.

Client X has been a client of Kalos since 2011.

C. *Co-Plaintiff Lilly Ortiz*

Ortiz is a former employee of Kalos who started working in June 2021. She was assigned to work with Client X. Within the first month or two, Ortiz informed her supervisors that she was uncomfortable with Client X's behavioral proclivities while she

4

worked with him and that he would resist her closing the bedroom door when he was engaged.  Ortiz experienced Client X walking around the apartment totally nude numerous times.  She said she complained to her supervisors and asked that it stop or that she be transferred.  Ortiz claims that after the manager spoke with Ms. Corpus, they informed Ortiz that according to Ms. Corpus there was nothing they could do unless Client X was physically violent.

Ortiz continued to express her disgust, offense, and unsafe feelings to her immediate supervisor on at least five separate occasions and was told that the supervisor would bring it up to Corpus again.

Between January 2022 and March 2022 Ortiz reported to her supervisor several instances of physical violence by Client X toward her including physically kicking her out of Client X's apartment and physically pushing her out of his way.  After confirming that they had spoken to Corpus, the managers reportedly told Ortiz there was nothing they could do.

Between October 2022 and April 2023, at the manager's suggestion, Ortiz called Kalos' emergency "on call line" about Client X's behavior ten different times reporting an additional incident of physical violence and/or perceived sexual harassment. On half of those occasions, no one answered the phone.  On the other half she spoke to a person who said they would document it so Corpus could address the situation.  Ortiz also wrote written complaints which documented instances where Client X would make her feel unsafe while masturbating during nearly her entire shift in her presence or putting hands on her violently.

On May 1, 2023, Ortiz reported that Client X exposed himself to Ortiz, masturbated in front of Ortiz, touched her breast, and wiped semen on her.

Corpus claims that at no point before May 1, 2023, did Ortiz ever communicate any of the information about Client X to her and there was never a complaint of a sexual assault or sexual harassment of any kind to anyone at Kalos regarding Client X. When the events complained of on May 1, 2023, were reported by Ortiz to her supervisor, the supervisor informed Corpus the next day.  Ortiz requested reassignment following her shift on May 1, 2023, which was granted the next day on May 2, 2023.  After that Ortiz was never assigned to work with Client X again.

Ortiz claims that Kalos then substantially reduced her hours.

Ms. Corpus claims that Ms. Ortiz's own explanation for not working after May 1, 2023, is that she was pregnant.  Corpus claims that she personally offered her job back when she was able to return from maternity leave.  Any prior instances involving Ortiz, according to Corpus, were handled by Ortiz's supervisors at Kalos.  Corpus claims to have no actual knowledge of any of the situations giving rise to Ms. Ortiz's allegations until May 2, 2023.

   D. *Co-plaintiff Leslie Slover*

Leslie Slover is a former employee of Kalos.  During one of her first days working for Kalos with Client X she heard him making moaning sounds in his bedroom.  She learned from a supervisor at the time that he was masturbating and she was told to "just try to ignore it."  Slover experienced Client X walking

6

around his apartment with just his underwear on. She became unsettled, nervous, afraid and bothered by it. In April of 2021, she complained to her supervisor about the offensive and perceived harassing behavior. The supervisor said that he would meet with Corpus. After talking with Corpus, the supervisor reportedly told Slover to "tell Client X that we need to close the door."

Slover also reports an occasion where her supervisor witnessed Client X's violence when Client X chased Slover out of the apartment in a rage. She and her supervisor got in a car and locked the doors until Client X calmed down and went back in the house. Slover was told to call Kalos emergency on call phone line if she did not feel safe. The "on call" line operators told Slover that they would make note of the complaint and advise the owner.

Approximately July 13, 2023, Client X physically attacked Slover during her shift. Client X allegedly lunged at Slover opening his palms to try to strangle her while she was sitting in a chair. She ran for the door to escape. As she was leaving, Client X violently shoved her out the door. Client X took her purse and violently threw it out the door scattering belongings everywhere. The police were called.

After calling the police, Slover notified her supervisor who also told another supervisor to arrive on the scene. The police arrived and took Slover's statement. After giving her statement, she left her shift.

A few days later, Slover's leg and arm were still hurting and her cheek was bruised from the attack. She went to the

7

emergency room.  Slover advised her supervisor that she was not going to work with Client X again.  She was told on numerous occasions thereafter that Kalos did not have another client for her.

Corpus claims that Slover and Ortiz (who both deny) were both trained on how to deal with sexual harassment.  Corpus claims (which Slover and Ortiz deny) that they knew full well the conditions presented by working with Client X and the protocols for addressing them and had been trained on how to handle his care.  As with Ortiz, Corpus claims that she was unaware of any of Ms. Slover's complaints about her assignment with Client X. Corpus claims that following her reassignment, Slover failed to show up to work with her reassigned client.  After several no shows, she eventually spoke to her supervisor in August 2023 and acknowledged that Kalos could assume she was voluntarily terminating her employment.

   E. *Managers*

There were two primary managers at Kalos for Ortiz and Slover.  Tracy Heath was an immediate supervisor with the title "house lead."  Ms. Heath reported to manager Mike Farmer.  Mike Farmer reported to either Corpus or program director Esther Rivera.

2.   Procedural Status

Co-plaintiffs filed a complaint against Corpus alleging non-dischargeability under § 523(a)(6).  Defendant Kalos filed a motion to dismiss for insufficiency of service of process,

8

failure to join a necessary party, and failure to state a claim upon which relief can be granted. Civ. Rule 12(b)(4)(5)(6) (Fed. Rule Banky. Proc. 7012). Defendant also moved to strike references to the name of "Client X." The court denied the motions to dismiss under Civ. Rules 12(b)(4) and (5). The court also denied the motion to dismiss as to as to the claims of Lilly Ortiz. The court granted the motion to dismiss as to the claims of Leslie Slover with leave to amend. The motion to strike was denied and the court directed the clerk to seal the original complaint.

After filing the first amended complaint, defendant Kalos responded with this motion for judgment on the pleadings. Civ. Rule 12(c). However, Defendant presented a declaration of Amy Corpus in support of the motion which involved matters outside the pleadings. The court did not exclude the matters but under Civ. Rule 12(d), the court gave the parties a reasonable opportunity to present all the material pertinent to the motion as the court treated the motion as one for summary judgment. The parties entered into a joint order regarding discovery pertinent to this motion. Some of that discovery has been submitted both in support and opposition to the motion.

**JURISDICTION**

This court has jurisdiction of this adversary proceeding and motion under 28 U.S.C. § 1334(b) and by reference to this court by the United States District Court under 28 U.S.C. § 157(a). This court may hear and finally determine this matter under 28 U.S.C. § 157(b)(2)(I).

**DISCUSSION**

1.    Summary Judgment Standards

Summary Judgment should be granted when there are no genuine issues of material fact and when the movant is entitled to prevail as a matter of law.  Civ. Rule 56 (made applicable in adversary proceedings by Rule 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law would properly preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Id.* at 247-48 (emphasis in original).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id* at 249.  The court engages in a threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Id.* at 250.

The court "does not weigh the evidence or determine the truth of the matter but only determines whether there is a genuine issue for trial."  *Balint v. Carson City Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).  "Reasonable  doubts as to the

10

existence of a material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1334 (9th Cir. 2000). However, the court is required to do so only in circumstances where a fact specifically averred by the moving party is contradicted by specific evidence submitted in opposition to the motion. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Conjecture, surmise, or "metaphysical doubt" by the non-movant of the movant's assertions will not defeat a summary judgment. *See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586. The non-movant's evidence must be probative. *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (B.A.P. 9th Cir., 1999). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation". *Id.* at 165.

2.   Application of § 523(a)(6)

Section 523(a)(6) excepts the debt of an "*individual debtor*" from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). The Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) held the word "willful" in [523](a)(6) modifies the word "injury," indicating that non-dischargeability takes a deliberate or intentional *injury* not merely a deliberate or intentional *act* that leads to injury. Negligent or reckless acts

11

do not suffice to establish that resulting injury is willful and malicious. *Id.* at 64; citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934).

Under *Geiger*, it must be shown not only that the debtor *acted* willfully but also that the debtor inflicted the *injury* willfully and maliciously rather than recklessly or negligently. *Petralia v. Jercich (In re Jercich)*, 228 F.3d 1202, 1207 (non-payment of wages under the circumstances of that case constituted willful and malicious tortious conduct).

In her motion, Corpus stresses that the injury suffered by the co-plaintiffs must have been "by the debtor." It is undisputed that the actual injurious conduct by Client X was the immediate cause of the injuries to the co-plaintiffs. From that premise, Corpus concludes that there is no evidence in opposition to the motion for summary judgment to show that the debtor committed any act or omission that amounted to a willful or malicious injury.

Also, Corpus argues that the co-plaintiffs and other employees were trained in the care needed for Client X and similar clients. Thus, some of the behavioral proclivities of Client X are part of the job and known to the co-plaintiffs. The co-plaintiffs vehemently deny this. At the hearing on the motion, counsel for Kalos noted this position would not be pursued.

Co-plaintiffs counter that though it may be true that Corpus did not perform the injurious acts, either Corpus herself or co-plaintiffs' managers and supervisors were aware of various incidents involving Client X before the occurrences in May and

12

July of 2023 that resulted in co-plaintiffs reassignment to other clients. Co-plaintiffs therefore urge a theory imputing to Corpus knowledge of prior incidents involving co-plaintiffs. Co-plaintiffs continue to urge that the significant delay between their managers reporting these incidents to Corpus and any action being taken amounted to harassment and in Corpus' case were willful and malicious actions or inactions.

Defendant counters that by urging that the co-plaintiffs factual theories may fit a claim under the California Fair Employment and Housing Act (Cal.Gov'nt Code § 12940(j)(1)). However, even if Corpus' actions or inactions were proscribed under California law, there is insufficient proof of any willful or malicious action or inaction.

As will be seen, though the issue is close, there does appear to be disputed issues of material fact for both the "willful" and "malicious" prongs of § 523(a)(6) which preclude granting the motion for summary judgment.

　　　a. Disputed Issues of Fact as to Willfulness.

In the Ninth Circuit, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had an subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of her conduct. *Jercich*, 238 F.3d at 1208. A debtor is charged with the knowledge of the natural consequences of her actions. *Ormsby v. First American Title Co. of Nev.*, 591 F.3d 1199, 1206 (9th Cir. 2010). In addition to what a debtor may admit to knowing, the bankruptcy court may consider

13

circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury provoking action. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1146.  But "sloppy business practices" do not equate to a willful injury. *Palm Finance Corp. v. Eberts (In re Eberts)*, 607 Fed. Appx. 683, 689 (9th Cir. 2015) citing *Ormsby*, 591 F.3d at 1206.

Since it is undisputed that Corpus did not have a subjective motive to inflict the alleged injuries on co-plaintiffs, if there is a disputed issue of fact, it is on the question of whether Corpus was substantially certain injury was going to incur to either Ortiz or Slover as a result of her action or inaction.

On this subject, there is widely diverging evidence.  Corpus contends that given the number of her employees and the limitations of the types of "reports" she usually received, she did not learn of Ms. Ortiz's complaints until May 2, 2023.  Ms. Corpus immediately removed Ms. Ortiz from Client X's care responsibilities.

Countering that, the plaintiffs presented evidence that they communicated through the supervisory chain established at Kalos and that based upon the policies in effect at the time, both Ms. Ortiz's and Ms. Slover's supervisors were duty bound to report to Ms. Corpus.

In Ms. Ortiz's case on at least five separate occasions, she testified that Farmer told her words to the effect that he was going to continue to bring up Ms. Ortiz's concerns to Ms. Corpus. Mr. Farmer also testified in his deposition that he did not have any reason to believe he failed to tell Ms. Corpus about any harassment or other incidents.  Further, Farmer met with Corpus

14

at least twice per year regarding annual/quarterly reports about Client X and those reports were expected to include behaviors such as physical aggression and masturbation.

As to Ms. Slover, it is clear that at least as of May 2023, Ms. Corpus was aware that Client X had behavioral tendencies that could be perceived by staff as harassment or dangerous.  Slover worked with Client X "for years."  Ms. Slover's declaration stated that as early as April 2021, Farmer told her that he had talked to Amy Corpus and reported to Corpus' response to Slover.  Ms. Slover also testified in declaration that she called Kalos' emergency on call line approximately ten or more times and each time was told the complaint would be noted for the owner.

Corpus herself testified knowing of four to five incidents of Client X "physically touching someone" between 2020 and 2025.

This evidence at least raises a disputed material factual issue as to Corpus' knowledge of Client X's behavioral tendencies.  This leads to a disputed material factual question as to whether she was "substantially certain" that injury would occur as a result of the assignment of co-plaintiffs to Client X.[4]

///

///

///

---

[4] Defendant has repeatedly argued that the alleged reporting by Farmer of Client X's behavioral incidents to Corpus and Farmer relaying Corpus' alleged response are hearsay or double hearsay.  First, testimony that Farmer stated he spoke with Corpus is not hearsay under Fed. R. Evid. 801(d)(2)(D) as Farmer is an undisputed agent of Amy Corpus.  Second, Farmer reporting Corpus' response is also not hearsay because Corpus' is a party under Fed. R. Evid. 801(d)(2)(A).  Even if Corpus' statements are hearsay – they are not – they would be allowed under Fed. R. Evid. 803(3).  The "weight" of the evidence may be insubstantial.  But that is not an appropriate analysis on this motion.

b. There are Disputed Issues of Material Fact as to Malice.

In the Ninth Circuit, a malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *Jercich*, 238 F.3d at 1209 quoting *In re Bammer*, 131 F.3d 788, 791 (9th Cir. 1997) (*En Banc*). The first issue is whether Corpus' alleged acts were wrongful. Under Cal.Gov'nt Code § 12940(j)(1) it is an unlawful employment practice:

> For an employer....to harass an employee....an employer may also be responsible for the acts of non-employees with respect to harassment of employees, ...if the employer or its agents or supervisors knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of non-employees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those non-employees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring.

Simply establishing a claim will not pass muster under § 523(a)(6). The court quotes that section only to show that if facts supporting such a claim were present, it may be a wrongful act under California law. That does not make that act malicious without substantial additional evidence.[5]

Assessing whether an employer has taken reasonable steps to either prevent or remedy harassing conduct does not equate to a

///

---

[5] See also Cal.Gov'nt Code § 12940(k). In *Trujillo v. North County Transit District*, 63 Cal.App 4th 280, 286 (1998) Court of Appeal noted that provisions of Cal.gov'nt Code § 12940 establish a legal duty of care toward plaintiffs, a breach of a duty (a negligent act or omission), legal causation and damages. However, that does not reach the proof required under § 523(a)(6).

16

willful and malicious act.  Indeed, reckless or negligent conduct may be incorporated in a liability determination under California law.  However, that does not mean for bankruptcy purposes, a debt should not be discharged.

There are genuine issues of material fact as to whether Corpus acted intentionally.  Plaintiffs' factual theory depends in large part on imputing actions or inactions of supervisors directly to Corpus.  However, for purposes of § 523(a)(6) imputed or vicarious liability is not appropriate for non-dischargeability purposes in the Ninth Circuit. *Del Rosario v. Rosario (In Rosario)*, 668 B.R. 618, 629 (B.A.P. 9th Cir. 2025). This reinforces that § 523(a)(6) requires willful and malicious acts by the debtor not the debtor's agents.

Disputed material issues of fact exist since Ms. Corpus admitted that she never investigated any of Client X's conduct until after she received the summons and complaint from plaintiffs' attorneys in this adversary proceeding.

Corpus counters that after Corpus received Ms. Ortiz's May 2, 2023, complaint she conducted a conversation with Farmer and immediately directed Ortiz's reassignment and implemented protocol restricting Client X's activities.  Further, § 523(a)(6) requires a subjective intent on behalf of the debtor to injure. A formal investigation does not equate to intentional malicious conduct without substantially more evidence.

There are also disputed issues of fact as to whether any conduct or omission of Corpus, if proven, necessarily caused injury to the co-plaintiffs.  For example, defendants contend ///

17

that Corpus did not personally supervise direct care staff including the plaintiffs.  Rather, Kalos utilized multiple supervisory layers including program directors, supervisors, and managers.

In response, plaintiffs maintain that in deposition, Corpus testified that all formal incident reports were emailed directly to her and she admitted she expected to be made aware immediately of physical aggression toward staff and expected an incident report and a phone call.  Further, there were at least semi-annual meetings between Farmer and Corpus which included a discussion of Client X's behavior proclivities.

Plaintiffs argue that Ms. Corpus admitted in her deposition that she heard about four or five incidences of Client X physically touching someone between 2020 and 2025.

Defendants counter that though true, those facts do not establish that Corpus subjectively believed serious sexual injury or other injury to plaintiffs was a substantially certain result from any operational decisions Corpus may have made.  Corpus reminds that Client X is a seriously developmentally disabled individual prone to behavioral proclivities that may include unwanted touching.  However, that does not mean that assignment of employees to Client X's care would necessarily cause injury.

As there are numerous material issues of fact, there is no need to discuss whether Corpus had any just cause or excuse since there are numerous material undisputed facts preventing a summary judgment concerning both willfulness and malice.

///

///

18

## CONCLUSION

Though the issue is close, there are too many factual disputes present for the court to find that summary judgment in favor of the defendant is appropriate.  Material disputed issues concerning defendant's knowledge, intent, and awareness as it relates to both co-plaintiffs are numerous.  So, for the forgoing reasons defendant's motion for summary judgement shall be denied.  A conforming order will issue.

Dated: Jul 17, 2026                    By the Court

René Lastreto II, Judge
United States Bankruptcy Court

19

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.


Jeffrey Hogue
Hogue & Belong
3555 Fifth Ave., Ste 300
San Diego, CA 92103

Peter A. Sauer
7650 N. Palm Ave., Ste 101
Fresno, CA 93711